IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02362-DDD-NRN

DENVER BIBLE CHURCH,
PASTOR ROBERT A. ENYART,
COMMUNITY BAPTIST CHURCH, and
PASTOR JOEY RHOADS

      Plaintiffs

v.

ALEX M. AZAR II, in his official capacity as Secretary, United States Department of Health and
Human Services;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
CHAD F. WOLF, in his official capacity as Acting Secretary, United States Department of
Homeland Security;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
STEVEN T. MNUCHIN, in his official capacity as Secretary, United States Department of the
Treasury;
UNITED STATES DEPARTMENT OF THE TREASURY;
GOVERNOR JARED POLIS, in his official capacity as Governor, State of Colorado;
JILL HUNSAKER RYAN, in her official capacity as Executive Director of the Colorado
Department of Public Health and Environment,
COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,

      Defendants.

---

## EMERGENCY MOTION FOR STAY OF INJUNCTION PENDING APPEAL

Defendants, Governor Jared Polis, Executive Director Jill Hunsaker Ryan, and the

Colorado Department of Public Health and Environment (collectively, the "State Defendants")

move under Fed. R. App. P. 8(a)(1)(C) and Fed. R. Civ. P. 62(d) for a stay of this Court's Order

Granting In Part Plaintiffs' Motion for Preliminary Injunction [Doc. 65] pending appeal.

Certificate of Conferral: The undersigned conferred with Plaintiffs' counsel regarding this motion. Plaintiffs oppose this motion.

## PROCEDURAL BACKGROUND

Plaintiffs filed their federal complaint on August 9, 2020, alleging First Amendment free exercise claims, among others. [Doc. 1.] Plaintiffs filed a motion for a preliminary injunction on August 17, 2020, seeking to enjoin multiple executive and public health orders issued by the State Defendants to combat the COVID-19 pandemic. [Doc. 13.] The State Defendants filed an opposition to the preliminary injunction motion on August 27, [Doc. 41] and Plaintiffs replied on September 1. [Docs. 44, 45.] This Court requested supplemental briefing on September 7, asking the parties to address the differences between houses of worship and other entities such as a critical retailer. [Doc. 49.] The Court specifically asked whether there are special concerns present at houses of worship that are not also present in the critical retail setting. [*Id.*] The State Defendants submitted their supplemental brief and supplemental declaration from the State's Epidemiologist on September 14. [Docs. 50, 50-1.] Plaintiffs responded on September 18. [Doc. 56.] The parties submitted multiple supplemental authorities during and after the preliminary injunction briefing. [Docs. 55, 58, 63, 64.]

This Court granted in part Plaintiffs' motion for preliminary injunction on October 15, 2020, enjoining the State Defendants from enforcing the indoor occupancy limitations for houses of worship in Public Health Order (PHO) 20-35, §§ II(B)(2)(j), II(C)(2)(j), and II(D)(2)(j), and the face-covering requirement in Executive Order D 2020 138, and PHO 20-35, §§ I(B), III(C)(1), III(C)(4)(g), and III(C)(5)(c) where the temporary removal of a face covering is

2

necessary for Plaintiffs or their employees, volunteers, or congregants to carry out their religious exercise. [Doc. 65.]

On October 16, 2020, the State Defendants appealed the Court's preliminary injunction to the United States Court of Appeals for the Tenth Circuit. *See* 28 U.S.C. § 1292(a)(1) (interlocutory order granting a preliminary injunction is appealable).

## STANDARD OF REVIEW

Fed. R. App. P. 8(a)(1)(C) states that a party must ordinarily move first in the district court for an order suspending an injunction while an appeal is pending. Fed. R. Civ. P. 62(d) provides that while an appeal is pending from an interlocutory order that grants an injunction, the district court may suspend the injunction on terms for bond or other terms that secure the opposing party's rights.

In evaluating a motion under Fed. R. App. P. 8(a), the Court must consider: (1) whether the moving party has shown they are likely to prevail on the merits of the appeal; (2) whether the moving party has shown irreparable harm if the stay is not granted; (3) whether the stay will substantially harm the other parties; and (4) where the public interests lie. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996); *Evans v. Bd. of Cnty. Comm'rs of Cnty. of Boulder, Colo.*, 772 F. Supp. 1178, 1181 (D. Colo. 1991).

## ARGUMENT

**I.      Colorado satisfies the requirements for a stay of the preliminary injunction pending appeal.**

The standard for staying an injunction pending appeal is similar to the standard governing

a preliminary injunction motion, and the Court has already found in Plaintiffs' favor on those factors. Nevertheless, the State Defendants must first pursue a stay from this Court before requesting one on an emergency basis in the Tenth Circuit. Fed. R. App. P. 8(a)(1)(C). The State Defendants therefore incorporate their legal arguments, reasoning, and exhibits from their prior submissions opposing Plaintiffs' motion for a preliminary injunction. Without waiving any of the specific arguments made in those filings, the State Defendants assert that each factor weighs in favor of granting a stay of the preliminary injunction pending appeal.

**Merits**. The State Defendants are likely to prevail on the merits of their appeal for at least two reasons.

*First*, this Court's order enjoining aspects of the State Defendants' public health orders did not give proper weight to the State Defendants' scientific evidence as required by *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). The State's Epidemiologist explained that certain customs observed at many houses of worship increase the risk of transmitting COVID-19. [Doc. 41-1, ¶¶ 56-60.] She testified, for example, that choirs and other singing in houses of worship have been identified as a source of infection and transmission. [*Id.* at ¶ 59.] She also explained that houses of worship often involve significant mixing of vulnerable older persons with younger persons who are more likely to be asymptomatic and cannot be screened, increasing the risk to the vulnerable population. [*Id.* at ¶ 51 (80% of those under 30 are asymptomatic); *id.* at ¶¶ 52-53, 56.] In fact, data shows that a substantial amount of contact that older adults have with younger children occurs in house of worship settings. [*Id.* ¶ 50.] Because this and other compelling medical evidence presented by the State Defendants implicates "medical and scientific uncertainties," it should not be "second-guess[ed] by an unelected federal judiciary, which lacks

the background, competence, and expertise to assess public health[.]" *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring) (quotations omitted). But this Court's order reflects the type judicial second-guessing that the Supreme Court cautions against. [*See* Doc. 65 at 26 (acknowledging that "[p]erhaps" the State's Epidemiologist testimony about increased risk of transmission at houses of worship is correct, but then discounting it).] Indeed, if the State Defendants' evidence is "[p]erhaps" correct, *id.*, or at least not clearly erroneous, it is hard to glean exactly how Colorado's PHO 20-35 is "beyond all question" a "plain, palpable invasion of rights" held by Plaintiffs. *Jacobson*, 197 U.S. at 31.

*Second*, and relatedly, the Court's order compares apples to oranges when analogizing houses of worship to other venues like schools, warehouses, and restaurants. They are not comparable. *See High Plains Harvest Church v. Polis*, No. 20-cv-01480-RM-MEH, 2020 WL 4582720, at *2 (D. Colo. Aug. 10, 2020) (declining to find discrimination against houses of worship due to the "myriad of differences between the protests and Plaintiffs' desired [religious] services").

Take schools. The State's Epidemiologist explained at length how schools and houses of worship differ: (1) unlike houses of worship, there is less mixing between age groups at schools; (2) school-aged students are primarily under 18, and thus less likely to suffer severe illness from COVID-19; (3) group size is generally already limited in schools to fewer than 50 individuals per room as reflected in the pupil-to-teacher ratio of 17 to 1 for the 2019-20 school year; and (4) in the case of an outbreak, case investigation and contract tracing are "very effective" in a school setting because the location and timing of students and staff are closely tracked. [Doc. 50-1, ¶¶ 49-57.] Similarly, the risks inherent in retail settings varies markedly from houses of worship.

5

Retail environments do not have long interactions between people, happen between those who do not know each other, and do not involve increased respiratory exhalation. [*Id.* ¶66–69.] Contrary to the Court's observations, houses of worship and retailers are not similar environments. These distinctions between houses of worship and other venues, as explained through the State Defendants' expert testimony, were entitled to more deference and weight than was afforded in the Court's order. *See Lawrence v. Colorado*, 455 F. Supp. 3d 1063, 1071  (D. Colo. 2020) ("It is, rather, the role of the people's elected representatives to determine, in light of the available information, the best course to combat a public health threat, and courts must be careful not to usurp that role.").

**Irreparable Harm**. It is true that if a movant demonstrates that it is likely to establish a violation of its right to free exercise, then it has also necessarily established irreparable harm. *Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Given the exigencies of a global pandemic and surging case counts in Colorado, Coloradans face real and palpable risks from the injunction entered in this case. Under these circumstances, the irreparable harm to the State Defendants if a stay is not granted merges with the public interest factor and is addressed below.

**Harm to Other Party**. For two reasons, Plaintiffs will not suffer harm if the preliminary injunction is stayed pending appeal.

*First*, Pastor Enyart and Pastor Rhoads both testified that the capacity limitations are irrelevant to them because the six-foot social distancing requirement control their houses of

6

worship' capacity. [Doc. 56-1 at ¶ 2 ("[T]he 50 percent cap and the 50 person limit appear to be irrelevant because social distancing requirements control our attendance."); Doc. 56-2 at ¶ 2 ("[I]n our case -due to the size of our building- social distancing requirements control our occupancy limit.").] Pastor Enyart confirmed that attendance would remain the same, regardless of whether the capacity limits are enjoined: "Even if the 50 percent occupancy cap were lifted, attendance could not exceed 24-36 people if the six-foot social distancing requirements remains. Thus, there is no evidence that removing the occupancy cap would permit more attendance." [Doc. 56-1 at ¶ 3.] Pastor Rhoads confirmed the same: "Based on the size of our auditorium where we hold our worship services, even if the 50 percent or 50 person limit occupancy cap were lifted, attendance could not exceed 20-35 people if the six-foot social distancing requirement remains." [Doc. 56-2 at ¶ 3.]

Pastor Enyart and Rhoads both conclude that the six-foot distancing requirement, not the capacity limits, are impacting their houses of worship. [Doc. 56-1 at ¶ 4 ("For example, this deters parents with four children from dressing the children and driving a half hour to get to church, only to find out they may not be admitted due to *social distancing limitations*.") (emphasis added); Doc. 56-2 at ¶ 4 ("In addition, the *social distancing requirements* have adversely impacted the food bank and the time our volunteers spend handing out food.") (emphasis added).]

*Second*, staying the preliminary injunction as to the mask order will not harm Plaintiffs. Plaintiffs allege no specific harm as to why their rights are infringed by wearing a mask. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006) (alleged injury must be concrete and particularized). In conclusory fashion, they simply allege that the "mask

7

requirement prevents Plaintiffs' congregations from their right to free expression[.]" [Doc 13 at 2.] This generalized grievance, without more, is not enough to present a First Amendment violation. Because Plaintiffs have not articulated any harm resulting from the mask order, much less demonstrating the same, a stay of the preliminary injunction will not harm them.

**Risk of Irreparable Harm to the Public Interest if a Stay is not Granted.** Over 2,000 Coloradans have died as a result of the virus, and the transmission rate is currently increasing.[1] In fact, on Saturday, October 10, the State of Colorado had its first day since March where over 1,000 new COVID-19 cases were reported in the state, along with a positivity rate exceeding the 5% recommended by the World Health Organization in order to control the spread of the disease.[2] Enjoining Public Health Order 20-35 at this critical juncture and allowing houses of worship to operate without any capacity restrictions and without masks will very likely result in outbreaks of COVID-19 statewide. Indeed, such an outcome is far from hypothetical. It has already happened within houses of worship that disregarded the public health orders.

By way of example, this past summer, a local ministry held a summer bible conference indoors with hundreds of people in attendance.[3] That event resulted in a COVID-19 outbreak in Teller County that included 46 staff members and 17 attendees with confirmed or probable cases, including the ultimate death of one attendee. *Id.* To illustrate the effect this had county-wide, the

---

[1] https://covid19.colorado.gov/data

[2] *See* https://www.9news.com/article/news/health/coronavirus/update-polis-covid-19-colorado-response/73-cfe0d62b-1a30-4ab0-b6db-0136732d87b0

[3] Active outbreak data for Andrew Wommack Ministries Summer Bible Conference can be found at: https://covid19.colorado.gov/covid19-outbreak-data.

outbreak accounted for 24% of Teller County's case count and 45% of the county's two-week case average.[4] The risks presented here are not imagined. This is merely one small example of the heavy price attendees and the public at large will have to pay if these types of settings are permitted to disregard these important public health measures.

And the harm does not end there. Outbreaks such as this further contribute to the significant strain on our healthcare system and consume an enormous amount of our limited public health resources. Patients currently hospitalized for confirmed COVID-19 infections are at 329 and rising in the state–numbers not seen since May of this year.[5] This number will continue to rise as a result of outbreaks. And, as the record demonstrates, case investigation and contact tracing can only do so much given that infected individuals are contagious before they become symptomatic and can spread the infection days before becoming ill. [Doc. 41-1 ¶ 30.] Further exacerbating the problem is the fact that many individuals never become symptomatic at all. *Id.* Finally, outbreaks cause untold impacts on the local economies.

The public interest in slowing the spread of COVID-19 far outweighs the harm that Plaintiffs would face by having to abide by PHO 20-35 pending appeal. Currently, Plaintiffs are able to worship freely and to accommodate their congregations by using any combination of holding additional services, using multiple rooms, utilizing outdoor space, or by engaging

---

[4] *See* https://www.co.teller.co.us/PublicHealth/News/BoH%20Mitigation%20Plan%20Response%20to %20CDPHE%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.pdf

[5] *See* https://covid19.colorado.gov/data; https://www.kktv.com/2020/10/14/very-worrisome-covid-19-cases-in-colorado-exceed-1000-in-last-2-out-of-3-days/

attendees online. For all of these reasons, this Court should grant a stay of its decision to award this extraordinary injunctive remedy to Plaintiffs—in essence the full relief they would be entitled to after a full trial on the merits.

**CONCLUSION**

For these reasons and those in the State Defendants' previous submissions, this Court should stay its preliminary injunction under Fed. R. App. P. 8(a)(1)(C) and Fed. R. Civ. P. 62(d) pending appeal.

Dated: October 16, 2020

PHILIP J. WEISER
Attorney General

s/ W. Eric Kuhn
_W. Eric Kuhn*_
_Corelle M. Spettigue*_
Senior Assistant Attorneys General
_Ryan K. Lorch*_
Assistant Attorney General
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720-508-6143
FAX: 720-508-6041
Email: eric.kuhn@coag.gov
        corelle.spettigue@coag.gov
        ryan.lorch@coag.gov
Attorneys for Jill Hunsaker Ryan, in her official
  capacity as Executive Director, and the Colorado
  Department of Public Health and Environment

s/ Grant T. Sullivan
_Grant T. Sullivan*_
Assistant Solicitor General
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720-508-6349
FAX: 720-508-6041
Email: grant.sullivan@coag.gov
Attorney for Governor Jared Polis

*Counsel of Record

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ W. Eric Kuhn
_W. Eric Kuhn*_

11

## CERTIFICATE OF SERVICE

I certify that I served the foregoing EMERGENCY MOTION FOR STAY OF

INJUNCTION PENDING APPEAL upon all parties herein by e-filing with the CM/ECF system

maintained by the Court, this 16th day of October, 2020 addressed as follows:

Rebecca R. Messall
Messall Law Firm, LLC
7887 E. Belleview Avenue, Suite 1100
Englewood, CO  80111
rm@lawmessall.com
*Counsel for Plaintiffs*

J. Brad Bergford
Bergford Law
801 E. Florida Ave. Ste. 800
Denver, CO 80210
brad@bergfordlaw.com
*Counsel for Plaintiffs*

Kyle Brenton
Jason Lynch
Assistant United States Attorney
United States Attorney's Office | District of Colorado
1801 California Street, Suite 1600
Denver, CO  80202
Email:   kyle.brenton@usdoj.gov
         jason.lynch@usdoj.gov
*Counsel for United States Defendants*

s/ W. Eric Kuhn
**W. Eric Kuhn**