IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cv-02362-DDD-NRN

DENVER BIBLE CHURCH;
ROBERT A. ENYART;
COMMUNITY BAPTIST CHURCH; and
JOEY RHOADS,

      Plaintiffs,

v.

ALEX M. AZAR II, in his official capacity as Secretary, United States Department of Health and Human Services;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
CHAD W. WOLF, in his official capacity as Acting Secretary, United States Department of Homeland Security;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
STEVEN T. MNUCHIN, in his official capacity as Secretary, United States Department of the Treasury;
UNITED STATES DEPARTMENT OF THE TREASURY;
GOVERNOR JARED POLIS, in his official capacity as Governor, State of Colorado;
JILL HUNSAKER RYAN, in her official capacity as Executive Director, Colorado Department of Health and Environment; and
COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,

      Defendants.

---

### ORDER DENYING MOTION TO STAY
### PRELIMINARY INJUNCTION PENDING APPEAL

---

Before the court is the State Defendants' motion to stay, pending interlocutory appeal, the court's order preliminarily enjoining them from enforcing certain aspects of public-health orders they issued in response to the COVID-19 pandemic. [Doc. 67.] The motion is denied.

On October 15, 2020, the court issued its Order Granting in Part Plaintiffs' Motion for Preliminary Injunction [Doc. 65]. The order preliminarily enjoins Defendants Jared Polis, Jill Hunsaker Ryan, and the Colorado Department of Public Health and Environment (collectively, "State Defendants") from enforcing against the two Plaintiff churches and their pastors: (1) the indoor occupancy limitations set forth in Public Health Order 20-35; and (2) the face-covering requirement set forth in Executive Order D 2020 138 and Public Health Order 20-35, where the temporary removal of a face covering is necessary for Plaintiffs or their employees, volunteers, or congregants to carry out their religious exercise. On October 16, the State Defendants filed a notice of appeal of that order [Doc. 66], along with the instant motion [Doc. 67] to stay the order pending appeal.

In evaluating a motion to stay a preliminary injunction pending interlocutory appeal, the court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two of these factors are the most critical; the movant must show more than a possibility of success on appeal, and more than a possibility of irreparable injury in the absence of a stay. *Id.* at 434-35. If a movant satisfies the first two factors, the court must then assess the potential harm to the opposing party and the public interest. *Id.* at 435. "There is substantial overlap between these and the factors governing preliminary injunctions, not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action

before the legality of that action has been conclusively determined." *Id.* at 434 (citation omitted).

The State Defendants have not made a strong showing that they are likely to succeed on the merits of their appeal. State Defendants contend that (1) the court misapplied *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) by not giving proper weight to their scientific evidence, and (2) the court erred by "compar[ing] apples to oranges when analogizing houses of worship to other venues." [State Defs.' Mot., Doc. 67 at 4-5.] The first contention is simply untrue: the court accepted the State's evidence that transmission of COVID-19 is more likely indoors when people are together for long periods of time. [Doc. 65 at 27.] And as to the second, simply declaring that houses of worship are apples while every other Critical Business is an orange is not a constitutional justification. Every setting is, of course, unique. But the State's evidence did not show that unmasked congregants sitting indoors for an hour at a six-foot distance in the pews poses a greater risk of transmission than does, *e.g.*, unmasked diners sitting indoors for an hour at six-foot-distanced tables in a restaurant. The heart of the problem with the State's current treatment of houses of worship is that while the State recognizes that different secular settings may need more or less restrictive rules to carry out their missions, it makes a blanket assumption as to what is necessary for houses of worship to carry out their religious exercise, and, with no compelling reason, concludes that they can get by with less.

The other stay factors require the court to balance the State's and the public's compelling interest in health and safety against the Plaintiffs' and the public's compelling interest in vindicating fundamental constitutional rights. Both are important. And the court does not discount the gravity of the irreparable harm to the State and the public that might result from additional transmissions of COVID-19 among

Plaintiffs' congregations. To be clear, though, it is simply not true that the court's preliminary injunction "allow[s] houses of worship [across the state] to operate without any capacity restrictions and without masks" as State Defendants contend. [State Defs.' Mot., Doc. 67 at 8]. The court's order applies only to the Plaintiffs in the instant case and their relatively small congregations. As the State Defendants recognize, under the current public-health orders, enjoining the capacity restrictions at issue here will have no direct effect in light of the size of Plaintiffs' sanctuaries and the still-enforceable six-foot distancing requirement. [*Id.* at 6-7.] And, the court's order permits Plaintiffs and their congregants to temporarily remove their masks at church only when doing so is necessary to carry out their religious exercise. If the State does not believe Plaintiffs' contention that the face-mask mandate actually burdens their religious exercise, it should have argued as much in response to the preliminary-injunction motion.[1] [*See* Order, Doc. 65 at 20-21 (noting State did not challenge Plaintiffs' assertion "that they have bona fide religious reasons for . . . permitting worshippers to remove masks during services").]

Considering these facts and the competing compelling interests at stake, the court finds here that the balance of harms and the public interest weigh in Plaintiffs' favor for the same reasons detailed in its preliminary-injunction order. The weighty questions posed by this case do, nonetheless, tempt the court to grant the State Defendants' requested stay in order to preserve the status quo during what the court presumes will be a relatively brief time period before the Tenth Circuit determines

---

[1] The State Defendants might also have cross-examined Plaintiffs on this point at a preliminary-injunction hearing. Instead, they moved to vacate the hearing the court set on the motion. [*See* State Defs.' Mot. to Vacate, Doc. 35.]

the merits of the appeal. The harm to Plaintiffs during the period of this stay would likely be somewhat less than it would be while awaiting a full resolution of this case on the merits.[2]

Ultimately, though, the State Defendants have not made the required showing for a stay, particularly on the "critical" merits factor, and their Emergency Motion for Stay of Injunction Pending Appeal [Doc. 67] is therefore DENIED.

DATED: October 16, 2020     BY THE COURT:

Hon. Daniel D. Domenico

---

[2]   *But see Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).